IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 2:22-cr-029-01 |
| | ) |
| MICHAEL DONIVAN WHITE, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on defendant Michael White's Motion to Change Venue, ECF No. 162. The government opposes this motion. ECF No. 168. For the foregoing reasons, White's Motion to Change Venue, ECF No. 162, is **DENIED** without prejudice.

### I.

The government charged White with various crimes related to a drug trafficking conspiracy, possession of a firearm, and the murder of Big Stone Gap police officer Michael Chandler. ECF No. 110. Pursuant to Local Rule 2(c), this case was filed "in the division in which the crime charged is alleged to have occurred"—the Big Stone Gap Division.

Local news media—primarily in the Big Stone Gap and Abingdon areas, with occasional stories reaching as far as Charlottesville—covered Chandler's death and the subsequent court proceedings. Some of these news articles have been shared on social media, where commenters have expressed opinions about White, including that he should be subject to the death penalty or extrajudicial punishment. ECF No. 162, at 11–13; ECF No. 162-3.

1

## II.

The Sixth Amendment "secures to criminal defendants the right to trial by an impartial jury." Skilling v. United States, 561 U.S. 358, 377 (2010).

> By constitutional design, that trial occurs in the "in the State where the ... Crimes ... have been committed." Art. III, § 2, cl. 3); See also Amdt. 6 (right to trial by "jury of the State and district wherein the crime shall have been committed"). The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding ... at the defendant's request if extraordinary local prejudice will prevent a fair trial—a "basic requirement of due process," In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

Id. Effectuating these constitutional concerns, Federal Rule of Criminal Procedure 18 states that:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

"When considering an intra-district transfer of venue[,] courts have applied the same standards that are applicable to inter-district transfers under" Federal Rule of Criminal Procedure 21. United States v. Mosby, No. 22-CR-00007-LKG, 2023 WL 220130, at *4 (D. Md. Jan. 17, 2023). Federal Rule of Criminal Procedure 21(a) provides that: "Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Rule 21(a) most typically applies where excessive pretrial publicity threatens the impartiality of the jury. See United States v. Bakker, 925 F.2d 728, 732 (4th Cir. 1991). The defendant bears the

burden of establishing prejudice. See United States v. Salad, 915 F. Supp. 2d 755, 757 (E.D. Va. 2012) (citing Wansley v. Slayton, 487 F.2d 90, 94 (4th Cir. 1973)).

"Motions for a change of venue call for a two-step analysis." Bakker, 925 F.2d at 732. First, "a trial court must address whether the publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted." Id. If so, the trial court ought to grant the motion for a change of venue prior to jury selection. Id. However, "[o]nly in extreme circumstances may prejudice be presumed from the existence of pretrial publicity itself." Id. (quoting Wells v. Murray, 831 F.2d 468, 472 (4th Cir. 1987)); see also Skilling, 561 U.S. at 381 ("A presumption of prejudice, our decisions indicate, attends only the extreme case.").

Certain non-exhaustive factors are relevant to determining whether juror prejudice may be presumed. First, prejudice is less likely to occur in an area with a large, diverse pool of potential jurors. See Skilling, 561 U.S. at 382; see also Mu'Min v. Virginia, 500 U.S. 415, 429 (1991) (noting that the potential for prejudice was reduced by the sheer size of the Washington, D.C., metropolitan area). Second, the risk of prejudice is enhanced if the media coverage contains a "confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." See Skilling, 561 U.S. at 382–83. Third, the risk of prejudice decreases as the length of time between a widely reported crime and trial increases. Id. at 383.

Where prejudice may not be presumed, "a trial court customarily should take the second step of conducting a voir dire of prospective jurors to determine if actual prejudice exists." Id. (citing Wansley v. Slayton, 487 F.2d 90, 92–93 (4th Cir. 1973)). "Only where voir

3

dire reveals that an impartial jury cannot be impanelled would a change of venue be justified." Id.

> Save in that rare case where there is a showing of 'inherently prejudicial publicity which has so saturated the community, as to have a probable impact upon the prospective jurors[,]' . . . the trial court's primary responsibility in dealing with allegedly prejudicial pre-trial publicity—whether in connection with a motion for continuance or for a change of venue—is [to determine] whether, as a result of such publicity, it is reasonably unlikely that the defendant can secure a fair and impartial trial.

United States v. Jones, 542 F.2d 186, 193 (4th Cir. 1976) (footnote omitted) (alternation in original). "[T]rial courts must be vigilant to ensure that jurors are not biased and trials are not compromised by media attention surrounding a case." Bakker, 925 F.2d at 734. "However, 'it is not required . . . that jurors be totally ignorant of the facts and issues involved . . . . It is sufficient if the juror can lay aside his impression or opinion, and render a verdict based on the evidence presented in court.'" United States v. Beckford, 211 F.3d 1266, at *6 (4th Cir. 2000) (quoting Bakker, 925 F.2d at 734). The Supreme Court has made clear that "juror exposure to . . . news accounts of the crime . . . alone" do not "presumptively deprive[] the defendant of due process." Skilling, 561 U.S. at 380 (quoting Murphy v. Florida, 421 U.S. 794, 798–99 (1975) (alteration in original)); See also Nebraska Press Assn. v. Stuart, 427 U.S. 539, 554 (1976) ("[P]retrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial.").

### III.

Applying the three Skilling factors, the court finds that White has failed to establish presumed prejudice in the Big Stone Gap Division. Unless these circumstances materially change and White renews this motion, the court will assess juror prejudice through voir dire.

4

### A.

White argues that the small size of the Big Stone Gap Division weighs in favor of finding presumptive prejudice. ECF No. 162, at 4–6. The Big Stone Gap Division has a total population under 100,000, including 68,672 registered voters. Id. at 4–5. White argues that the demographics and relatively low mobility of residents in this Division increase the likelihood that potential jurors may either know individuals involved in this case or have close relationships with law enforcement officers in the area. Id.

However, as the government points out, ECF No. 168, at 8–9, this rationale would require courts to presume prejudice in every criminal case that receives pretrial publicity in the Big Stone Gap Division. Further, other high profile cases have been tried in a division of similar size within the Western District of Virginia, including a case involving defendants eligible for the death penalty. See United States v. Gilmore, No. 1:00CR00104, 2003 WL 22996905 (W.D. Va. Dec. 18, 2003) (determining that the pretrial publicity in case in which a town's former mayor was accused of ordering three murders—including that of a minor— did not warrant transfer from the Abingdon Division).

While small community size can weigh in favor of transfer, see Rideau v. State of Louisiana, 373 U.S. 723, 724 (1963), community size alone "is not dispositive" and the court must consider the other factors. United States v. Mujahid, No. 309CR00053TMBDMS, 2011 WL 13250643, at *5 (D. Alaska Sept. 23, 2011). In Rideau, 373 U.S. at 724, there was presumptive prejudice because the local media repeatedly aired a confession from the defendant, which was ultimately seen by approximately two-thirds of the community. While

5

the community here is also small, there is no indication here that a similarly high proportion of the community was exposed to such prejudicial coverage, as discussed below.

### B.

White contends that specific elements of the news coverage and related social media comments are inflammatory, such as references to Chandler's life, death, and funeral. White also points to coverage of his state arraignment hearing, which emphasize White's body language as the charges against him were read. ECF No. 162, at 7–9.

The risk of prejudice is heightened when the pretrial publicity is particularly inflammatory, such as when it "contain[s] a confession . . . or similar 'smoking gun' evidence of specific criminal acts" or where there is an "indication that the relevant communities ha[ve] been captivated by the case[ ] or adopted fixed views about the defendants." Skilling, 561 U.S. at 445, 447. By contrast, where the pretrial publicity is more factual in nature, the risk of prejudice from that news coverage is diminished. Id. at 447 (citing Murphy, 421 U.S. at 802).

Here, the media coverage itself is largely factual. Most of the articles focus on procedural developments in the case, and none contain a confession or the type of smoking gun evidence that would permit the court to presume prejudice under Skilling. Nor is the coverage of this case particularly voluminous; there is no indication that the community has been "captivated" by this matter. The social media comments, while inflammatory, were shared only within a Facebook group and not broadcast to the community as a whole. Therefore, the media coverage is not so inflammatory that prejudice must be presumed.

### C.

6

A delay of even seven months between the bulk of the news coverage and jury selection is sufficient temporal distance to mitigate prejudice. See Murphy, 421 U.S. at 802. Much of the news coverage in this case occurred shortly after Chandler's death in 2021 and White's indictment on federal charges in 2022. The social media comments were also posted around the time of these events. While further court developments have generated sporadic news coverage, these more recent articles focus increasingly on the procedural, purely factual developments of the case.

With trial now set for April 2024, most of the pretrial publicity associated with this case will be separated from the trial by a period of several years. This significant passage of time weighs against changing venue.

## IV.

For the foregoing reasons, White's Motion to Change Venue, ECF No. 162, is **DENIED** without prejudice. If subsequent developments or voir dire render impaneling an impartial jury impossible, White may raise the issue again.

Entered: July 20, 2023

Michael F. Urbanski
Chief United States District Judge